In the Matter of the Application of JOHN W. FLYNN et al.

A surrogate has, under the Code of Civil Procedure (§ 2481), the power to open or vacate his decree for fraud and may grant relief "upon the application of any one for sufficient reason in furtherance of justice in a like case and in the same manner as a court of record and of general jurisdiction."

The exercise of this power is not subject to the limitations of time prescribed by the provisions of said Code as to motions to set aside judgment for irregularity (§ 1282), and for error in fact not arising upon the trial (§ 1290).

(Argued December 12, 1892; decided December 20, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, made November 22, 1892, which affirmed an order of the surrogate of Saratoga county vacating and setting aside on the ground of fraud, a decree theretofore made settling the accounts of Charles Leach as general guardian of Lettie Leach Brown.

This was an application under the provisions of the Code of Civil Procedure (§ 2481, subd. 6), to open a decree made by the surrogate of Saratoga county March 25, 1890, on the final settlement of the account of Charles Leach, as general guardian of Lottie Leach Brown.

On October 21, 1869, Sarah Jane Leach died intestate, leav-

ing her surviving Charles Leach, her husband, and Lettie Leach, a daughter, who was born June 5, 1868. Charles Leach was appointed guardian of his daughter August 20, 1877, on his own petition, by the surrogate of Saratoga county, having executed a bond with Joseph H. Wood and John Gleason as sureties. Said guardian did not file any inventory or any account until March 19, 1890, when he rendered an account before said surrogate, having conveyed to his ward, who had come of age, his interest in said farm and received from her a life lease of a portion thereof and a credit of $3,000 on the bond and mortgage executed on the purchase thereof by himself and wife.

The account as settled showed $2,353.05 remaining in the hands of said guardian; a decree was rendered March 25, 1890, charging him with that amount, an execution was issued upon the judgment entered thereon, and $13 having been realized was the same day returned unsatisfied for $2,339.55.

On April 19, 1890, said surrogate granted leave to said Lettie Leach Brown to sue the said bond, and she forthwith brought a separate action against each of the sureties thereon. Both of said defendants answered alleging among other things fraud and conspiracy on the part of said guardian and the plaintiff. She recovered judgment in both actions. On April 1, 1891, lands belonging to Gleason, one of said defendants, who had died intestate, were sold to John W. Flynn and Charles Travis, the petitioners herein pursuant to an interlocutory judgment in a partition suit to which said Lettie Leach Brown was not a party. Wood, the defendant in the other action, was insolvent. On April 8, 1892, said Lettie Leach Brown filed with said surrogate a petition under the provisions of the Code of Civil Procedure (§ 2750 *et seq.*), asking for a sale of said premises as part of the real estate owned by said John Gleason at the time of his death, to satisfy her judgment. The petitioners here were made parties to that proceeding and after appearing instituted this proceeding to open the said decree made on the final settlement of the account of Leach as general guardian.

*Winsor B. French* for appellant. The order of the surrogate vacating and setting aside his former decree, is wholly erroneous and unauthorized, and should be reversed. (*Beardsley* v. *Hotchkiss*, 96 N. Y. 201; *Otis* v. *Hall*, 117 id. 131; *In re Kane*, 3 Barb. Ch. 376; *Clark* v. *Montgomery*, 23 Barb. 464; *In re Mark*, 5 Abb. [N. C.] 224; *In re Wright*, 1 Connolly, 281; Code Civ. Pro. § 2846; *In re Hawley*, 3 Dem. 571; *Melcher* v. *Stevens*, 1 id. 123.) The contention of the respondent that the proof on this hearing showed that there was fraud and collusion on the accounting, between the guardian and ward in the transfer of the life estate by the guardian to the ward, and the lease by the ward back to the guardian of an interest in the farm, covered by the mortgage, specified in the decree, is wholly without fact, proof or circumstance to sustain it. (*In re Wagner*, 119 N. Y. 28–36; *Cleveland* v. *Whiton*, 31 Barb. 544; *Bevan* v. *Cooper*, 72 N. Y. 317; *Saunders* v. *Soutter*, 126 id. 193–200; *Van Sinderen* v. *Lawrence*, 50 Hun, 272; Code Civ. Pro. § 2472; *Smith* v. *Nelson*, 62 N. Y. 286.) But more than two years expired between the date of the decree of settlement and the filing of the petition to set the same aside, which fact is alleged in the answer, and conclusively proved, and there being no fraud shown, the surrogate had no authority to grant said decree. (*In re Tilden*, 98 N. Y. 424, 442; *In re Hawley*, 100 id. 206, 210; *Corbin* v. *Westcott*, 2 Dem. 559.) The bondsmen or sureties have had their day in court, on the questions raised by this proceeding; and the respondents, claiming under Gleason, have no better right than the surety, Gleason, would have to contest the question again in these proceedings, either before the surrogate or here on appeal. (*Sharpe* v. *Freeman*, 45 N. Y. 306; *Sanders* v. *Soutter*, 126 id. 193; *In re Wagner*, 119 id. 28.) Petitioners were not equitably entitled to attack the decree of settlement on account of fraud or otherwise. (Code Civ. Pro. § 2755; *In re Haxtem*, 102 N. Y. 157; *Mead* v. *Jenkins*, 4 Redf. 309.) Respondents can as well contest the validity of the said decree on the proceeding to sell real estate as on this motion to vacate the same. (Code Civ. Pro.

§§ 2755, 2757.) This accounting between the guardian and ward before the surrogate, and his decree thereon, was entirely honest and more to the advantage of the guardian and his sureties than it might properly have been. (*King* v. *Talbot*, 40 N. Y. 76; 4 Kent's Comm. 74; Gerard on Real Estate, 142, 143; *House* v. *House*, 10 Paige, 158; *Mosely* v. *Marshall*, 22 N. Y. 200.) The respondents' contention that because the mortgage was due, and the farm on which it was a lien was worth more than the amount of the mortgage, the guardian had the right to pay off the same with the ward's money, and that such payment must be apportioned between him, as the life tenant, and the ward, is erroneous. (*Ainsworth* v. *Eldridge*, 15 Wkly. Dig. 199.) The theory on which the learned General Term affirmed the decree of the surrogate, as stated in the opinion, is erroneous  * * * * even though the question of the Statute of Limitations were not in the case. (Gerard on Real Estate, 142, 143.)

*Edgar T. Brackett* for respondents. It was a fraud, which when shown, was sufficient to open the decree entered on the accounting of the guardian, that the guardian was first charged with converting the whole $3,000 which came into his hands and was not credited in his account with the commissions to which he was entitled as guardian, with the $600 he had paid on the ward's farm from his own funds, with a reasonable sum for the ward's support during her minority and, finally, with the value of the tenancy by the curtesy of the guardian which he conveyed to the ward six days before the decree was granted. (*Banks* v. *Taylor*, 10 Abb. 192–202; *Ainsworth* v. *Aldrich*, 15 Wkly. Dig. 199, 200; *Shepard* v. *Stebbins*, 48 Hun, 250, 251; *Mosely* v. *Marshall*, 22 N. Y. 200; *Bell* v. *Mayor*, etc., 10 Paige, 49; *Clark* v. *Montgomery*, 23 Barb. 464–472; *Hatter* v. *Wright*, 22 N. Y. S. R. 83; *Vorssing* v. *Vorssing*, 4 Hun, 360–364; *Hyland* v. *Baxter*, 98 N. Y. 610–614; *In re Bostwick*, 4 Johns. Ch. 102.) The power of the surrogate was ample to open the decree. (Code Civ. Pro.

§ 2481; *In re Tilden*, 98 N. Y. 334.) The respondents had the right to initiate the proceeding to the surrogate to vacate this decree thus collusively obtained by the father and daughter for the express purpose of fraudulently collecting a large sum of money not due to the daughter, on any principle of justice or right. (*Platt* v. *Platt*, 105 N. Y. 497; *Ladd* v. *Stevenson*, 112 id. 325; *Alling* v. *Fahy*, 70 id. 571; *Hatch* v. *C. N. Bank*, 78 id. 487; *Vanderbilt* v. *Schreyer*, 81 id. 646.)

*Per Curiam.* The order of the surrogate opening the decree of March 25, 1890, settling the accounts of the general guardian (father) of Lettie Leach Brown, was made on the petition of the respondents, who were purchasers on a partition sale of real estate of Gleason, one of the sureties on the guardian's bond, without notice of any claim against the guardian on the part of the ward, and the land so purchased can be reached to satisfy the surrogate's decree against the guardian, if the decree stands. The order opening the decree was made, as expressed therein, " on the ground of fraud in said accounting," and the General Term affirmed the order generally. The power of a surrogate to open his decree for fraud is within the power conferred upon that officer by section 2481 of the Code of Civil Procedure, and the exercise of this power is not subject to the limitations of time prescribed by sections 1282 and 1290. (*Matter of Tilden*, 98 N. Y. 434–444.) The petitioners had a standing to make the application. The bondsman, Wood, is insolvent and the land owned by the deceased surety, Gleason, being the only available resource for the collection of the decree, the petitioners are the persons aggrieved and could properly initiate the proceedings to set it aside. The surrogate has the power of a court of general jurisdiction to vacate his decrees (§ 2481, sub. 6), and relief may be granted as in the Supreme Court, " upon the application of any one for sufficient reason in furtherance of justice." (*Ladd* v. *Stevenson*, 112 N. Y. 325.) If there was any evidence presented to the surrogate, tending to show fraud in the accounting, his decision finding its existence having

been affirmed by the General Term, this court is concluded from re-examining the question of fact. Our examination of the record has satisfied us that there was evidence presented to the surrogate, which might properly be considered tending to support the conclusion that the accounting of the general guardian was collusive and that the account rendered by the guardian and accepted by the ward, upon which the decree was based, adjudging the liability of the guardian and fixing the amount at the sum of $2,353, omitted credits to which the guardian was entitled, and that this omission was for the purpose of swelling his liability to his ward so as to charge the sureties on their bond in excess of the just amount. The case under the order will involve a new accounting and a re-examination of the items which make up the guardian's account. We refrain from expressing an opinion as to what charges or credits should enter into it. It is better to leave these questions unembarrassed by an opinion based on imperfect evidence.

Our duty is performed when we reach the conclusion that the charge of fraud was not wholly unsupported by evidence.

All concur.

Order affirmed.